Argued March 17; affirmed April 14, 1931

CURTIS *v.* KELLER ET AL.

(298 P. 196)

*Randall S. Jones,* of Portland (E. L. McDougal, of Portland, on the brief), for appellants.

*Plowden Stott* and *E. B. Seabrook,* both of Portland, for respondent.

BELT, J. This is an action to recover damages for personal injuries. Defendants are partners engaged in operating the Hotel Benson located at the corner of Broadway and Oak street, in the city of Portland. In

the sidewalk abutting the hotel on Oak street is an opening 4 feet wide and 5 feet long, constructed for an elevator which is used to carry trunks and supplies to the first floor in the basement. It is 13 feet from sidewalk to this floor. Steel hinged doors cover the elevator shaft and, when opened in a vertical position, are 30 inches high from the sidewalk. Two iron rods are used to hold the doors open and there is a gate-like guard next to the sidewalk opening, as a protection to pedestrians.

On November 10, 1928, about one o'clock in the morning, plaintiff came out of the main entrance to the hotel on Broadway, walked a short distance to the corner and then turned west on Oak street. It was unusually stormy. He says that the electric lights on the marquise above the entrance on Oak street were not burning and that the rain and wind beating against his face greatly hindered his vision. After walking about 30 feet from the corner, he struck one of the upturned doors to the opening, lost his balance, and fell to the elevator at bottom of pit, sustaining injury.

The gist of the action is that the defendants failed to keep the doors closed while the elevator was not being used, which, plaintiff avers, was in violation of section 742 of an ordinance of the city of Portland, which provides:

"Sidewalk doors are to be kept closed when not in use and when open shall be provided with iron rods or chains which will hold the doors open and provide a guard to the sidewalk opening."

Defendants deny the charge of negligence and allege affirmatively that whatever damage, if any, plaintiff sustained was due to his own carelessness and negligence in failing to observe where he was going and in

not seeing the elevator doors and guards around the opening. This charge of contributory negligence was denied in the reply.

The cause was submitted to a jury and a verdict and judgment were had in favor of plaintiff in the sum of $8,500.

■ We think no error was committed in the denial of the motion for judgment of involuntary nonsuit. Sidewalks are constructed primarily for the use of pedestrians. The city, in the exercise of its police power, has seen fit to permit openings in sidewalks for the use of elevators, but the ordinance clearly contemplates that the doors to such openings shall be closed when the elevators are not in use. The last time the elevator was used prior to the accident was at 11:30 p. m. One of the defendants testified that it is used only about once each hour during the night. No trunks or supplies were on the sidewalk ready for delivery by elevator to the basement at the time plaintiff was injured. We are convinced that the jury might well infer from the facts that defendants were negligent in not keeping the doors to the opening closed and that such negligence was the proximate cause of the injury. Whether, under the circumstances, plaintiff exercised due care to avoid injury was a question of fact for the jury. In the absence of notice to the contrary, plaintiff had a right to assume that the ordinance would be obeyed. Its violation was negligence per se.

■■ Defendants excepted to the refusal of the court to give the following instruction:

"Section 738 of the ordinances of the city of Portland, Oregon, which plaintiff charges the defendants violated is as follows:

" 'No open gratings or openings of any similar kind shall be installed in the sidewalk for the purpose of obtaining either light, ventilation or for any other purpose.'

"I instruct you that the plaintiff has produced no testimony of a violation of section 738 of the city's ordinances as charged in plaintiff's complaint, and you will therefore disregard this ordinance in this case."

It is plain that the opening in question was not installed for the purpose of light or ventilation and the plaintiff did not so charge. The allegation of the complaint that "the elevator was at the bottom of the basement * * * for the purpose of airing and ventilating said basement," was in keeping with plaintiff's theory that, at the time of the accident, the elevator was not being used for the purpose for which it was intended. It was incumbent upon the plaintiff to allege and prove that the doors were open at a time when the elevator was not in use. It was superfluous to allege a matter in reference to ventilation. At any rate, the jury was entitled to make such reasonable inferences as it saw fit as to why the doors were allowed to remain open while the elevator was not in use.

■ The second assignment of error is based upon the refusal of the court to instruct that there was no evidence of permanent injury to the plaintiff and that the jury should disregard that claim for damages. Turning to the record, we find that plaintiff, at the time of the injury, was 34 years of age and weighed 190 pounds. At the date of the trial, March 20, 1930, he weighed 170 pounds. This loss of weight was attributed by Dr. Fred Zeigler to the accident. This doctor examined plaintiff at the hospital on the morning that he was hurt and thus describes his injuries:

"He had a cut and bruise on the back of his head, and he had * * * a bruise on his right shoulder,

also a bruise on his left; he had a bruise on his back, around his hips and the end of his spine. He also had a laceration on the right leg, between the knee and the ankle, * * *. On the left leg he had a laceration as well as a puncture wound, some object had entered the soft tissue, gouging out a hole there about a half inch wide, I think, and probably rather near the bone. His left foot was swollen and discolored and his left thumb had an abrasion, that is, a cut, a slight cut, and bruised and swollen. * * * We had to get an arch for the left foot. * * *.

"In response to the question, 'What are the probabilities about the recovery from that injury to his left foot, will that be slow in recovering or will it recover quickly?' the doctor said:

"No, it will be slow. No one could ever say that it ever will be as strong as the other one, but sometimes after wearing an arch and allowing the ligaments to tighten up, sometimes they do recover. Sometimes we have to have special arches made for them before they do, and sometimes they don't recover at all. Some people have to wear arches all the time. He may have to do that. There isn't any way of knowing for sure."

The plaintiff testified, in substance, that he had suffered intense pain with his leg and that the blood circulation in it was bad. He also says that the broken arch of his left foot, after a lapse of sixteen months, had not improved and that it was necessary to support his foot by an artificial brace. We think the jury, from these facts, might infer that there was a reasonable probability of permanent injury: *Frint v. Amato,* 131 Or. 631 (284 P. 183). The question of permanency of injury is one upon which reasonable minds might differ.

■■ The court did not err in refusing to instruct in accordance with the request of defendants that no recovery could be had if plaintiff's injury were the

result of unavoidable accident. To instruct upon unavoidable accident, the case must be free of negligence for such defense is, in effect, a direct refutation of the charge of negligence: *Stamos v. Portland Electric Power Co. et al.,* 128 Or. 310 (274 P. 915). In the instant case it is clear that plaintiff's injury was due either to his own negligence or that of the defendants.

We see no reversible error in any of the instructions which the court gave to the effect that the doors of the opening were required to be closed unless the elevator was in "actual" use. In our opinion the elevator was not "in use," as contended by defendants, for under the testimony, it had been idle for nearly an hour prior to the accident. We think the use of the word "actual" conveyed to the jury the true meaning of the ordinance.

Defendants complain that the verdict is excessive. It is true that the amount of the verdict may be more than this court would have awarded, but its judgment cannot be substituted for that of the jury. It can interfere only when the amount is so excessive that it can be said that no fair-minded person would reach such a conclusion in the assessment of damages—and this we are not prepared to do in the instant case.

The judgment of the lower court is affirmed.

BEAN, C. J., BROWN and CAMPBELL, JJ., concur